FILED

2014 AUG -8 A 11: 56

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

**THEA RACHEL EPSTEIN**

Plaintiff,

v.

**LVNV FUNDING, LLC**

Defendant.

Civil Action No: 1:14cv1020-LO-TRJ

# COMPLAINT

Plaintiff Thea Rachel Epstein ("Plaintiff"), by and through counsel, brings this Complaint against LVNV Funding LLC ("Defendant" or "LVNV") on the grounds and in the amounts set forth herein:

## Preliminary Statement

1. Mrs. Epstein brings this case against the Defendant LVNV Funding, LLC, a debt purchaser, for its failure to conduct a reasonable investigation into the credit reporting for an account that it purchased from Citibank/Sears. Despite the fact that the original creditor, Citibank/Sears, stated in an ACDV that Mrs. Epstein's was not responsible for the account, LVNV Funding, through three different employees at three different times, instruct the credit reporting agencies that the account was Mrs. Epstein's after receiving ACDVs from the credit reporting agencies. As a result of these actions, LVNV Funding demonstrated a repeated and systematic failure to investigate the credit reporting for the account in violation of the requirements of 15 U.S.C. §1681s-2(b). Accordingly, Mrs. Epstein has file suit under the Fair Credit Reporting Act for actual damages, statutory damages, punitive damages, costs, and attorneys' fees as permitted by statute.

**Parties**

2. Plaintiff Thea Rachel Epstein is a natural person and is a resident and citizen of the Commonwealth of Virginia. Mrs. Epstein is a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because she is an individual. Unless otherwise specifically stated herein, the term "Plaintiff" shall refer to Thea Rachel Epstein.

3. LVNV Funding, LLC. (hereinafter "LVNV") is a furnisher of information as contemplated by FCRA section 1681s-2(a) & (b), that regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

**Jurisdiction & Venue**

4. This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681(p). Venue is proper in this jurisdiction and division as the Defendants are subject to personal jurisdiction in the Eastern District of Virginia, Alexandria division, by virtue of the business that it conducts in the division. Because the Defendant is subject to personal jurisdiction in the district and division, venue is proper in this Court.

**FACTUAL ALLEGATIONS**

5. Thea Rachel Epstein had a problem with her credit report related to an account with Citibank involving or opened with Sears. Mrs. Epstein always asserted that she did not open the account and that the account did not belong to her. Rather than prove to Mrs. Epstein that she was indebted on the account ending in the last four digits 3719, Citibank/Sears would just charge off the balance owed and sell the debt to a debt purchaser, Defendant LVNV.

6. LVNV Funding, LLC is a limited liability company, which is wholly owned by Sherman Originator, LLC. The basic business plan of these companies is to purchase defaulted debts for pennies on the dollar and proceed to collect on the debt by dunning consumers to turn old defaulted debts into performing assets.

7. Based upon the practice in the industry among debt buyers, LVNV would not have received any original documentation showing that Plaintiff was obligated to pay the balance on the Citibank/Sears account as part of LVNV's alleged purchase. It is common in the debt purchase industry that debts are sold pursuant to a purchase agreement called a "forward flow agreement" between the seller and buyer. Typically in these forward flow agreements, no representations are made regarding ownership or authenticity for any particular debt. In addition, no warranties and little supporting documentation are provided by the seller to the buyer. In all likelihood, LVNV simply represented that it purchased the account and began its process of collecting the debt by placing the account on the Plaintiff's credit report to force payment and issue dunning letters for payment.

8. LVNV's actions are in contravention of known Federal Trade Commission authority that states that a debt buyer must have some underlying supporting documentation that the debt buyer actually owns an account prior to representing on a consumer's credit report that an obligation is owed by verifying the debt in response to an ACDV. *See* 2000 FTC Consent Decree in the matter of *U.S. v. Performance Capital Management*, available on the internet for review at http://www.ftc.gov/os/2000/08/performconsent.htm (stating in part, "[W]hen a consumer disputes the accuracy of information reported by the defendant to a consumer reporting

agency, defendant shall either verify the information with the original account records within the time period set forth in Fair Credit Reporting Act or take all necessary steps to delete the information from the files of all consumer reporting agencies to which the information was reported. In any situation where the defendant either knows that no original records exist, or is informed by the original creditor that no records exist, the defendant shall, within five business days after receiving the consumer dispute, notify all consumer reporting agencies to which the information has been provided that the information is to be deleted from the file of the consumer who has disputed the account.")

9. If LVNV had conducted any account review of either of the Citibank/Sears accounts at issue in this action prior to the time of collection, LVNV would have known of the disputed nature of the account.

10. In an effort to have the inaccurate LVNV account removed from her credit report, Mrs. Epstein sent dispute letters to the three credit reporting agencies that reported the inaccurate Sears/Citibank account and the corresponding LVNV account that ended with the last four account numbers of 3719.

11. Mrs. Epstein contended in the dispute that the Citibank Sears account ending in the last four digits 3719 did not belong to her and was not her responsibility. On August 2, 2012, Citibank/Sears sent an ACDV response to TransUnion that instructed TransUnion to suppress the credit reporting for the 3719 account because it did not belong to Mrs. Epstein. Citibank/Sears specifically stated "DOES NOT BELONG TO THE CONSUMER (C)" when asked on the ACDV whether the information should be suppressed. At this juncture, no reasonable investigation into the accuracy of the account would result in the verification of the debt as even the original creditor Citibank/Sears

represented in an ACDV that the debt should be suppressed because it did not belong to Mrs. Epstein.

12. Despite the fact that the original creditor would state that the account did not belong to Mrs. Epstein, LVNV would continue to report the debt to all three credit reporting agencies as the responsibility of Mrs. Epstein after receiving three different ACDVs from the credit reporting agencies. All three credit reporting agencies provided LVNV with ACDVs as required by the Fair Credit Reporting Act after receiving a credit dispute letter from Mrs. Epstein.

13. On August 10, 2012, LVNV through its employee, Sara Traylor, responded to an ACDV that LVNV received from Equifax. In the response, LVNV failed to instruct Equifax to delete the trade line from Mrs. Epstein's credit report. No reasonable investigation into the disputed trade line would result in any action other than the deleting of the trade line as Citibank/Sears, the original creditor, had already stated in ACDV response that the account should be deleted because it did not belong to Mrs. Epstein. Based upon information and belief, Ms. Traylor conducted no independent investigation of the account to assure that LVNV had actual records and proof that Mrs. Epstein owed the debt prior to responding to the ACDV. Based upon the manner in which the debt purchasing industry operates, it is highly unlikely that LVNV had any original account records demonstrating that Mrs. Epstein opened the account. Finally, LVNV maintained the account in its records with the exact same account number as Citibank/ Sears, so there is no doubt that a reasonable review of the account records would have required deletion of the trade line if LVNV had bother to contact the original creditor.

14. On August 10, 2012, LVNV, through a different employee, Tammy Jordan, responded to an ACDV that LVNV received from TransUnion. In the response, LVNV failed to instruct TransUnion to delete the trade line from Mrs. Epstein's credit report. No reasonable investigation into the dispute trade line would result in any action other than deleting of the trade line as Citibank/Sears had already stated that the account should be deleted because it did not belong to Mrs. Epstein. Based upon information and belief, Ms. Jordan conducted no independent investigation of the account to assure that LVNV had actual records and proof that Mrs. Epstein owed the debt prior to responding to the ACDV. As previously stated, it is highly unlikely that LVNV had any original account records demonstrating that Mrs. Epstein opened the account, and the original creditor had already admitted that the account did not belong to Mrs. Epstein in its ACDV response. LVNV maintained the account in its records with exact same account number of Citibank/ Sears, so there is no doubt that a reasonable review of the account records would have required deletion of the trade line. In addition, Ms. Jordan did not bother to include an XB code on the compliance condition field section of the ACDV, which Ms. Traylor had included on the Equifax ACDV meaning Ms. Jordan may not have reviewed any of the account records prior to responding to the TransUnion ACDV as she even failed to note the previous dispute history for the account.

15. On August 28, 2012, LVNV through its employee, April Day, responded to a third ACDV that LVNV received, which was from Experian. In this response, LVNV failed to instruct Experian to delete the trade line from Mrs. Epstein's credit report. No reasonable investigation into the disputed trade line would result in any action other than the deleting of the trade line as Citibank/Sears had already stated that the

account should be deleted because it did not belong to Mrs. Epstein. Based upon information and belief, Ms. Day conducted no independent investigation of the account to assure that LVNV had actual records and proof that Mrs. Epstein owed the debt prior to responding to the ACDV. For the same reasons that the previous processors should have deleted the account, Ms. Day should have deleted the account when she received the ACDV from Experian.

16. Despite three different opportunities for three different employees of LVNV to conduct a reasonable investigation into the credit reporting of the Citibank/Sears account with last four digits 3719, not one person reasonably investigated the account. Just a week earlier, the original creditor agreed with Mrs. Epstein that the account should be suppressed because it did not belong to her. Despite this admission by the creditor, LVNV would continue to report the account on Mrs. Epstein's credit report.

17. Given the recklessness in its credit reporting that resulted in three different employees all verifying a debt that the original creditor agreed was not Mrs. Epstein's responsibility, punitive damages are necessary for the brazen failure of LVNV to comply with the requirements of the Fair Credit Reporting Act.

18. Evidence of the recklessness of LVNV's actions is further demonstrated by the fact that the underlying creditor, Citibank/Sears, instructed TransUnion to delete the accounts when provided with the exact same information that LVNV was provided. In addition, because LVNV responded to their ACDVs after Citibank/Sears, LVNV could have contacted Citibank/Sears for guidance on the facts related to the account that it purchased. However, LVNV's actions demonstrated that it does not care about getting the credit reporting accurate or conducting meaningful investigations. The reasonable

inference from LVNV's failure to comply with the requirements of the FCRA is that it realizes that the only way to collect on disputed debts is to have the information remain on the consumer's credit file and wear down the consumer until they make payment arrangements rather than try to continue to prove their innocence.

19. Based upon information and belief, LVNV Funding has implemented an ACDV dispute investigation procedure that recklessly disregards its known duties to conduct detailed, systematic investigations as required by the FCRA for the investigation of consumer disputes. Based upon information and belief, LVNV ACDV processors have no mechanisms to meaningfully investigate disputes and no authority to make decisions to delete accounts when responding to an ACDV. This is demonstrated by the fact that the underlying creditor agreed that Mrs. Epstein did not open the account, which LVNV would have known if it had bothered to ask the entity from whom it purchased the debt. Based upon information and belief, LVNV knows the risks associated with collection of these debts as it purchases the debt without warranty and with little supporting documentation. Despite this knowledge, LVNV proceeds to credit report and verify the debt in effort to extract significant profits at the cost of a consumer's financial life and good name. Only substantial punitive damages can cure this conduct.

20. The LVNV account remained on Plaintiff's credit report and created an unnecessary burden on Mrs. Epstein, which resulted in emotional distress worrying about liability and credit reporting for the LVNV account. She even received dunning letters from debt collectors believed to have been hired by LVNV to further weigh on her to try and make payment arrangements.

21. On March 13, 2014, Mrs. Epstein attempted to obtain a mortgage to purchase a new home, but the LVNV account appeared on her credit report. Mrs., Epstein was devastated that her efforts to purchase a home were delayed by the appearance of the LVNV account.

22. LVNV's actions caused frustration, anger, and distress to Mrs. Epstein that she otherwise should not have had to go through had LVNV simply conducted a reasonable investigation of the disputes that it received from the credit reporting agencies and deleted the disputed account in August 2012.

**COUNT I**
**Fair Credit Reporting Act**
**15 U.S.C. 1681 s-2(b)**

23. Plaintiff incorporates paragraphs one (1) through twenty-two (22) as if fully stated herein.

24. LVNV both negligently and recklessly violated the Fair Credit Reporting Act at 15 U.S.C. 1681s-2b(b)(1)(A) by failing to conduct a reasonable investigation with respect to the three ACDV disputes that it received from the credit reporting agencies as identified in the factual averments.

25. LVNV, through its employees Sara Traylor, Tammy Jordan, and April Day, failed to conduct a reasonable investigation of disputed accounts as detailed in the factual averments by failing to instruct the credit reporting agencies to delete the accounts. If LVNV Funding had completed a reasonable investigation into any one of these ACDVs, LVNV would have done the exact same thing as the original creditor: delete the account from Mrs. Epstein's credit report. In fact, if LVNV had bothered to

contact the entity that sold it the debt, it would have learned that the original creditor admitted that the account(s) "DOES NOT BELONG TO THE CONSUMER."

26. LVNV knows that it purchases debts without warranties from the seller, knows that it receives little to no documentation that a consumer is actually responsible for an account and proceeds to report the account on a consumer's credit report anyway. After receiving ACDVs in this case, it ignored federal FCRA law, ignored the FTC guidance, and did not bother to contact the original creditor. Substantial actual and punitive damages are warranted under the present fact pattern for failing to investigate the dispute in accordance with 15 U.S.C. §1681s-2(b).

27. Plaintiff is entitled to actual damages, statutory damages, and punitive damages based upon the violations of the Fair Credit Reporting Act. Plaintiff suffered damages in the form of loss of time working to correct the reporting of the inaccurate account, emotional distress of dealing with the problems related to the LVNV account, loss of access to credit. In addition, Mrs. Epstein demands all attorney's fees and costs in accordance with the FCRA.

**Prayer for Relief**

Wherefore, the Plaintiff prays that the Court award the following relief:

a) Compensatory damages against Defendant;

b) Punitive damages based upon Defendant violations of the FCRA;

c) Statutory damages against Defendant based upon their violations of the FCRA;

d) Pre-judgment interest, interest, costs and reasonable attorneys' fees incurred by the Plaintiff;

e) All other further relief that this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demand trial by jury as to all issues against all defendants.

Respectfully submitted
THEA RACHEL EPSTEIN

By: Counsel

A. Hugo Blankingship, III, VSB 26424
Thomas B. Christiano, VSB 43940
Blankingship & Christiano, P.C.
11790 Sunrise Valley Drive, Suite 103
Reston, Virginia 20191
(571) 313-0412
F: (571) 313-0582